## Case No. 2,904.

### CLOUD v. HEWITT.

[3 Cranch, C. C. 199.][1]

Circuit Court, District of Columbia. Nov., 1827.

INSPECTION OF FLOUR—QUI TAM ACTION—PARTIES—PLEADING.

1. In an action for a penalty. under the Virginia act of 21st December, 1792, "regulating, the inspection of flour and bread," it is not necessary that the United States should be nominally a plaintiff, but the penalty may be recovered in an action qui tam.

[Cited in Winne v. Snow, 19 Fed. 508.]

2. In an action for the penalty for altering the inspector's marks on barrels of flour, it is necessary to set out the marks, and how altered.

3. The word "condemned" must be branded on the cask, or it is not within the fifteenth nor the tenth section of the act.

This was an action of debt qui tam, under the tenth and fifteenth sections of the Virginia act of 21st December, 1792, "regulating the inspection of flour and bread." Pages 229, 231. The declaration had two counts: 1st. Upon the tenth section, for lading on board a ship for exportation twenty barrels of flour, marked "condemned" by an inspector. 2d. Upon the fifteenth section, for altering the inspection marks on twenty-four barrels of flour. The defendant demurred to the declaration.

Mr. Hewitt, for defendant, contended that, under the act of congress of the 3d of March, 1801 (2 Stat. 115), supplementary to the act concerning the District of Columbia. section 2, it was necessary that the action should be in the name of the United States and of the informer, and that a qui tam action by the informer, who sues for himself and the United States, is not sufficient.

But THE COURT (nem. con.) overruled the objection.

THE COURT, however, was of opinion that the second count was bad, in not setting out what the marks were. which were altered, and how they were altered.

Mr. Swann, for plaintiff, had leave to amend his declaration, and the defendant pleaded nil debet.

Mr. Taylor, for defendant, upon the trial of the issue upon nil debet, contended that the evidence did not bring the case within the fifteenth section of the act. That the mark "condemned" contemplated in the statute,

means a mark branded; whereas, the evidence is, the mark was only made with red chalk. In the tenth section the word is "marked;" in the fifteenth, the expression is "stamped" or "branded, condemned." It is a highly penal law, seven dollars a barrel, and should be construed strictly. The policy of the law requires that the word "condemned" should be as permanently marked as any other word which the inspector is required to put upon the barrel.

Mr. Swann, contra. The inspector, if the flour is unmerchantable, is, by the tenth section. to "cause the same to be marked, on the bilge, with the word 'condemned,' or secure it for a further examination, if required; which examination the owner shall procure to be made within twenty days." This shows that the mark was to be temporary, not permanent, and if upon such re-examination, the flour shall be found merchantable, "the inspector shall erase out the word 'condemned,' and put such brand on the flour as" the examiner shall direct. The degree of fineness only is to be branded.

THE COURT (THRUSTON, Circuit Judge, contra) was of opinion that the word "condemned" must be branded on the bilge, or it is not within the fifteenth or the tenth section of the act.

The verdict being for the defendant, upon both counts, Mr. Swann, for the plaintiff, moved for a new trial, on the ground of misdirection of the jury by the court upon the matter of law; and the case was again argued by Mr. Swann, for plaintiff, and Mr. Hewitt for defendant.

CRANCH, Chief Judge, delivered the opinion of the court (THRUSTON, Circuit Judge, contra), as follows:

This was an action of debt, under the tenth and fifteenth sections of the act of Virginia, of the 21st of December, 1792, "for regulating the inspection of flour and bread." Rev. Code, 229. The first count was upon the tenth section, for lading on board a ship, for exportation from the town of Alexandria, in the District of Columbia. twenty barrels of flour marked "condemned," by an inspector in that town. The second count was upon the fifteenth section, and was for altering the mark "condemned," which had been put upon the barrels of flour by an inspector.

THE COURT, upon the trial of the issue upon the plea of nil debet had (THRUSTON, Circuit Judge, contra) instructed the jury that the word "condemned" must be branded; or it was not such a mark as was contemplated by the statute. Upon this instruction the jury found a verdict for the defendant, the marks having been made with red chalk only; which was said to have been the invariable practice under the statute; and it was said that the inspectors had never used a brand for that word; but had always used brands for the four words indicating the four degrees of fineness of the

flour, namely, "superfine," "fine," "middling," and "shipstuff."

Mr. Swann, for plaintiff, moved for a new trial, on the ground of misdirection of the jury, by the court, on the point of law. This motion has been argued, and the question now to be decided, is, whether the mark "condemned" must be branded on the cask.

The main object of the law was to prevent the exportation of bad flour, whereby the credit of the Virginia flour would be injured in foreign markets. The fourth section provides that all flour brought to a port "for exportation," shall be made of due fineness, &c. The fifth section regulates the size and quality of the · barrel. The sixth requires every miller of flour "for exportation," to provide and keep "a distinguishable brandmark," with which he shall brand every cask of flour and mark thereon the tare and net weight; and inflicts a penalty on any person, who shall remove any cask of flour from the place of manufacture, "not branded and marked as aforesaid." The carrier, who should have paid the penalty, might recover it from the miller, provided he informed him that he intended to carry it, and requested the miller "to secure and brand the said barrels." The seventh and eighth sections regulate the weight of flour which should be packed in the casks. The ninth relates to bread only. The tenth provides that any cask of flour brought to a port, to be from thence laden or shipped for exportation, shall be inspected by an inspector, and if he shall judge it to be well packed and merchantable, he shall "brand the cask in the quarter with the name of the place at which he is inspector, with a public brandmark, to be provided for that purpose; and shall also brand and mark the degree of fineness which he shall, on inspection, determine the said flour to be of; which degree shall be distinguished as follows, namely, superfine, fine, middling, and shipstuff." "No inspector shall pass any flour which shall prove, on examination, to be unmerchantable, according to the true intent and meaning of this act, but shall cause the same to be marked on the bilge with the word 'condemned,' or secure it for a further examination if required; which examination, the owner shall procure to be made within twenty days." It then provides the mode of appeal to three persons, to be appointed by a justice of the peace; "and if they or any two of them, shall pass and declare the same to be merchantable; in such case, the inspector shall erase out the word 'condemned,' and put such brand on the said flour, as they or any two of them shall direct." "It shall not be lawful, for any person to export, or lade on board of any ship or vessel, for exportation out of this state, any cask of flour marked 'condemned' by an inspector; or to export or lade on board any ship or vessel, for exportation, from any port or place with-

in this state, any casks or barrels of flour, not inspected or branded as aforesaid, on pain of forfeiting ten dollars for every cask or barrel exported, or laden on board any ship or vessel, for exportation." The eleventh section declares, that complaints have been made that evil-disposed persons have packed flour "in old casks which have been branded agreeable to this act," and provides a penalty for so doing. The twelfth provides for the inspection at certain mills. The thirteenth contains the form of the inspector's oath, by which, among other things, he swears, "that no flour shall be passed or branded by him, without inspecting the same; that he will not brand, nor cause to be branded as passed, any cask or casks of flour that' do not appear to him" to be merchantable; "that he will mark on all casks of flour, the degree thereof, according to the directions of this act; that he will carefully examine the casks," "and that he will not pass or brand any such casks, unless they be of such size, goodness, and thickness, as by this act are required." The fourteenth section forbids inspectors to purchase flour, unless for their own use. The fifteenth section provides that, "if any person shall alter the mark stamped on any cask of flour, by an inspector, or shall mark or brand any cask of flour, which has not been inspected, with any mark or brand, similar to, or in imitation of any inspector's mark or brand, or after an inspector shall have passed any cask of flour as merchantable, shall pack, into such cask, any other flour; or after any cask of flour shall be branded 'condemned,' shall unpack, and re-pack the same in other casks, for exportation, such person shall forfeit and pay the sum of seven dollars for every cask."

These are all the parts of the act, which are believed to have any bearing upon the question in what manner the word "condemned," shall be marked upon the cask, within the meaning of the statute. It may be observed, that by the tenth section it is equally penal to export casks of flour not branded, as to export casks of flour "marked condemned," and therefore, it was not necessary that the word "condemned" should be branded on the cask; for whether branded or not, it could not affect the credit of the Virginia flour in a foreign market, because it was never to be exported. The tenth section does not say how the word "condemned" shall be marked on the cask; but it expressly provides that the degree of fineness of merchantable flour, shall be branded and marked; and if, upon appeal, flour, which the inspector shall have marked "condemned," should be determined to be merchantable, the inspector is to "erase out the word 'condemned,' and put such 'brand'" on the flour as the reviewers shall direct. The expression is not, such other brand, (which would have been used, if the legislature

had intended, that the word "condemned" should be branded on the cask,) but the expression used is "such brand as," implying that it had not been before branded and marked. The degree of fineness is to be branded and marked; the word "condemned" is to be marked. The same section makes it penal to export casks of flour, not inspected or branded as aforesaid. If the casks of flour should have been inspected and branded "condemned," they would not literally have been within this penalty, if the act had required the word "condemned" to be branded upon such casks. Hence it may be strongly inferred that the legislature did not intend that the word "condemned" should be marked by branding. The eleventh section, surely, is not intended to guard against the mischief of packing flour in old casks marked "condemned;" yet it complains that evil disposed persons have packed flour "in old casks which have been branded agreeable to this act." If the word "condemned" was to be branded on the cask, it would be included in the expression "branded agreeable to this act," and therefore within the letter of the mischief complained of, although clearly not within its spirit. The legislature, therefore, in this section, seems to have considered the term "branded" as applicable only to the branding of merchantable flour.

This is believed to be the whole substance of the argument, on the part of the prosecution, upon this point; and if the question rested entirely upon the tenth and eleventh sections of the act, the court would be clearly of opinion that the penalty for lading on board of a ship, for exportation out of the district, a cask of flour marked "condemned" by an inspector, might be incurred, although it were so marked with red chalk, and not branded. But the question does not rest on those two sections only. The whole act must be construed together, so as to be consistent in all its parts, if possible. The tenth is the only section which requires that the word "condemned," should be marked upon casks of unmerchantable flour. When the fifteenth section says, that "if any person" "after any cask of flour shall be branded 'condemned' shall unpack and re-pack the same in other casks for exportation, such person shall forfeit and pay the sum of seven dollars for every cask," it evidently refers to the marking of the word "condemned," required by the tenth, and renders that certain, which the tenth section left uncertain, to wit, the manner of marking the word "condemned."

It is evident that the legislature took it for granted that, under the tenth section, the word "condemned" was to be branded on the cask; and. upon the principles of construction applicable to penal laws, no person would be liable to the penalty of seven dollars a barrel, under the fifteenth sec-

tion, for unpacking and repacking condemned flour in other casks, for exportation, unless the word "condemned" had been branded on the cask. That the mode of marking was, by the tenth section, left to the discretion of the inspector, is only matter of inference; and we think that the inference, arising from the fifteenth section, is stronger than that arising from the tenth and eleventh sections. We think that the tenth and fifteenth sections must have the same construction, as to the mode of marking; and, if they conflict with each other, one must yield. But we do not think that there is any repugnance between them. One designates the mode; the other does not. The uncertain must be construed by the certain. This construction is corroborated by other sections of the act. The sixth requires every miller of flour, for exportation, to provide and keep a distinguishable brand-mark, with which he shall brand every cask of flour, and mark thereon the tare and net weight; and inflicts a penalty for removing the casks not branded and marked, as aforesaid; but the person removing the cask, and who may have paid the penalty, may recover it from the miller, if he shall have informed him of his intention to carry them, and requested him to brand the casks. He is not obliged to request the miller to brand and mark the casks, but only to brand; implying that the tare and net weight is to be marked by branding. The thirteenth section contains the form of the inspector's oath, by which he swears not to pass or brand any flour without inspecting it. Here the word "brand" may be applied, as well to unmerchantable as to merchantable flour. He is not to pass, nor to brand as condemned, any flour without inspecting it. He further swears that he will not brand, as passed, any flour not merchantable; implying that the flour may be branded, and not passed. He also swears that he will mark, on all casks of flour, the degree thereof. Here the word "mark" is used for brand; for, by the tenth section, he is to brand and mark the degree of fineness. Some stress was laid on the word "erase," in the tenth section, where it is said that, if flour which has been marked "condemned," should. upon appeal, be adjudged merchantable, the inspector shall "erase out" the word "condemned." It was said that the word "erase" was not the proper word to designate the obliteration of a brand-mark. But, in truth, it is the most proper word that could be used to express the idea. It is derived from the Latin word rado, which signifies to shave, to scrape, to make smooth. It is defined by Johnson, "to blot out by razure;" and razure is defined to be "the act of scraping, or shaving." Whatever argument, therefore, may be derived from the meaning of the word "erase," is against the construction which would permit the word

"condemned" to be written with chalk; to the obliteration of which neither scraping nor shaving is necessary, as it is for that of a brand-mark.

Upon a comprehensive view of the whole act, we are still of the opinion which we expressed at the trial, that, unless the word "condemned" be branded on the cask, no person can be liable to the penalty, under the tenth section, for lading on board of a vessel, for exportation, flour marked "condemned;" nor to the penalty under the fifteenth section, for altering the inspector's mark.

Judgment for the defendant; but THE COURT ordered it to be certified that there was probable cause for the prosecution.